(No. 7251.   March 27, 1946.)

MARLIN HEWLETT, MONTY NEWELL, DONALD ANDERSON, TOMMY JOHNSON and GUY HELM, Minors; OSCAR HEWLETT and STELLA HEWLETT; ASA NEWELL and MRS. ASA NEWELL; ARTHUR ANDERSON and MYRTLE ANDERSON; J. J. JOHNSON and MRS. J. J. JOHNSON; GEORGE HELM and MRS. GEORGE HELM, Parents, Appellants and Cross-Respondents, v. PROBATE COURT OF CLEARWATER COUNTY, STATE OF IDAHO (E. B. Steele, Judge of said Court), Respondent and Cross-Appellant.

[168 P. (2d) 77.]
Rehearing denied April 29, 1946.

Paul W. Hyatt and Samuel F. Swayne for appellants.

Frank F. Kimble for respondent.

AILSHIE, J.—January 30, 1945, the probation officer of Clearwater county filed complaint in the probate court, sitting as a juvenile court, against Marlin Hewlett, Duane Harvey, Monte Newell, Donald Anderson, Tommy Johnson and Guy Helm, minors, under the provisions of chapter 13, Title 31, I.C.A., and charged them with being juvenile delinquents and as such, breaking and entering store buildings, belonging to others, removing "from cars and other places property not their own, and did habitually wander the streets and highways at night and in the nighttime without being on any lawful business"; and praying that "each of them may be cared for and corrected according to law and as provided by Chapter Thirteen of Title Thirty-one Idaho Code Annotated of 1932." On the same date, after an investigation made by the court, it was ordered that a formal hearing be had upon the information charging them with being juvenile delinquents, and that the parents be notified and served with notice of hearing.

The action against Duane Harvey was dropped as he was a resident of the state of Washington and was transferred to that state. The other minors, all under the age of eighteen years, were found to be residents of Clearwater county.

February 9, 1945, the probate court of Clearwater county, sitting as a juvenile court, made and entered a decree adjudging Marlin Hewlett, Monty Newell, Donald Anderson, Tommy Johnson and Guy Helm, minors, to be juvenile delinquent persons, under the provisions of Chap-

ter 13, title 31, I.C.A., and also adjudged and decreed that "each of them be and they each are committed to the Industrial Training School of Idaho at St. Anthony until they reach the age of twenty-one years or are sooner released from said school under the regulation thereof." All statutory requirements prior to entry of decree were complied with. At the time of entering the decree the minors were all under the age of eighteen years. The findings of fact disclose that, during the latter part of 1944 and the early part of 1945, the minors, collectively, were engaged in the commission of a series of crimes consisting of burglaries, grand larcenies and robberies, committed in Nez Perce and Clearwater counties. All of the minors and their parents are residents of Clearwater county and were in court at the time of entry of the decree.

February 12, 1945, the parents of the minors, jointly and severally, appealed to the district court of Clearwater county from the decree of the juvenile court, committing the minors to the Idaho Industrial Training School, and from the whole thereof, upon questions of both law and fact. Also, on the same date, on application of the minors' parents, a writ of review issued from the district court, directed to the probate court, with a return date of March 5, 1945, requiring the probate judge to certify and send up the record in the juvenile court, wherein the minors were adjudged delinquent persons and committed to the Idaho Industrial Training School. The respondent probate judge demurred to the sufficiency of the application and moved to quash the writ, which demurrer and motion were by the district court overruled and denied.

March 13, 1945, (filed March 15, 1945) the district court entered judgment affirming the decree of the juvenile court adjudging the minors to be delinquent persons, but holding that that part of the decree committing the minors to the Idaho Industrial Training School was a nullity.

The appellants have appealed from the judgment, on the grounds that the complaint in the juvenile court did not state sufficient statutory grounds to give the court jurisdiction to adjudge the minors to be delinquent persons. The respondent cross-appealed from the judgment holding that the juvenile court had no authority to commit the minors to the Idaho Industrial Training School.

The appellants submit two assignments of error, to the effect that the district court erred in affirming the judgment of the probate court, that the juveniles are, and each of them is, delinquent; and in remanding the matter to the probate court, sitting as a juvenile court for further proceedings; and erred in not vacating the order, judgment or commitment of the probate court in its entirety, and in not adjudging the entire proceedings, findings, judgment and orders of the probate court to be a nullity, for the reasons and upon the same grounds as set forth in assignment numbered one.

Sec. 31-1301 provides:[1]

Section 31-1302 vests the jurisdiction of juvenile delinquents in the probate court.[2]

Section 31-1303 provides the procedure for charging delinquents and trial of the case.[3]

---

[1]"31-1301. Delinquent child defined.—This chapter shall apply only to children under the age of eighteen years not inmates of a state institution, or any institution incorporated under the laws of the state, for the care and correction of delinquent children. The record of the census made by the clerk of the school district where any child was last enumerated shall be prima facie evidence of the age of such child for the purposes of this chapter. The words 'delinquent child' shall include any child under the age of eighteen years who violates any law of this state, or any city or village ordinance; or who is incorrigible or who knowingly associates with thieves, vicious or immoral persons; or who is growing up in idleness or crime, or who knowingly visits or enters a house of ill-fame; or who knowingly patronizes or visits any policy shop or place where gambling device is, or shall be operated; or who patronizes or visits any pool-room or bucket shop, or who wanders the streets in the nighttime without being on any lawful business or occupation; or who habitually wanders about any railroad yard or tracks, or who jumps or hooks on to any moving train, or enters any car or engine without lawful authority; or who habitually uses vile, obscene, vulgar, profane or indecent language, or is guilty of immoral conduct in public places or about any schoolhouse. Any child committing any of the acts herein mentioned shall be deemed a juvenile delinquent person, and shall be proceeded against as such in the manner hereinafter provided. A disposition of any child under this chapter, or any evidence given in such cause shall not, in any civil, criminal

These provisions of the statute were passed upon and held to be constitutional in *In re Sharp*, 15 Ida. 120, 96 P. 563, 18 L.R.A., N.S., 886, and the Sharp case has been followed by this court ever since. (*In re Small*, 19 Ida. 1, 2, 116 P. 118; *Jain v. Priest*, 30 Ida. 273, 282, 164 P. 364; *Allen v. Williams*, 31 Ida. 309, 311, 171 P. 493; *Martin v. Vincent*, 34 Ida. 432, 435, 201 P. 492; *In re Farnsworth*, 46 Ida. 47, 49, 266 P. 421; *Bannock County v. Coffin*, 46 Ida. 531, 534, 269 P. 90; *In re Allmon*, 50 Ida. 223, 225, 294 P. 528; *Kelley v. Prouty*, 52 Ida. 743, 745, 19 P. (2d) 1061; *Porter v. Estate of Porter*, 54 Ida. 99, 103, 28 P. (2d) 898.

█ It seems clear that the "information" required by sec. 31-1303 has reference to the conduct of the child proceeded against and is intended to "be summarily disposed of by the court" and is civil and paternal in character. (*In re Sharp*, supra; *People v. Ross* (Mich.), 209 N.W. 663; *Burrows v. State* (Ariz.), 297 P. 1029.) The proceeding does not partake of the nature of a *criminal information*, as provided by the penal code (sec. 19-1201, I.C.A.).

"The procedure affecting custody or commitment of delinquent or dependent children is purely statutory, and

---

or other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatever, excepting in subsequent cases against the same child under this chapter. The word 'child' or 'children' may mean one or more children, or the word 'parent' or 'parents' may mean one or both parents when consistent with the intent of this chapter."

[2]"31-1302. Jurisdiction of probate court.—Records and reports.— The probate courts of the several counties in this state shall have jurisdiction in all cases coming within the terms and provisions of this chapter. Record books shall be kept by the court for all cases coming within the provisions of this chapter to be known as the juvenile record, and the docket or calendar of the court upon which there shall appear the case or cases under the provisions of this chapter shall be known as the juvenile docket. Between the first and thirtieth days of October of each year the court shall submit to the governor a report in writing, upon blanks to be furnished by the state, showing the number and disposition of delinquent children brought before such court, together with such other useful information regarding such cases, and the parentage of such children, as may be reasonably obtained at the trials thereof: provided, that the

it is not considered criminal or even quasi-criminal, or a proceeding according to the course of the common law or to the rules of chancery. According to some authorities the proceeding is a civil action, . . . It is held to be a special proceeding of a civil nature, . . ."

(43 C.J.S., sec. 99, p. 240; *Bryant v. Brown*, 151 Miss. 398, 118 So. 184, 60 A.L.R. 1325; *In re Santillanes*, 47 N.M. 140, 138 P. (2d) 503, 510; *Kahm v. People*, 83 Colo. 300, 264 P. 718, 719; *State ex rel Berry v. Superior Court*, 139 Wash. 1, 245 P. 409, 45 A.L.R. 1530; *Garner v. Wood*, 188 Ga. 463, 4 S.E. (2d) 137; *In re Morrison*, 176 Okla. 55, 54 P. (2d) 198; *Lueptow v. Schraeder*, 226 Wis. 437, 277 N.W. 124. See, also, 23 Harvard Law Review, pp. 104-122, *"The Juvenile Court,"* by Julian W. Mack.)

■ The contention made by appellants, that jurisdiction was lacking in the probate court because the probation officer had charged the delinquents proceeded against with the commission of felonies, is thought to be unsound and unsupported by the record. The complaint of the probation officer charges the defendants with *delinquency* rather than with felonies and, as an explanation of what the delinquency

---

name or identity of any such child or parent shall not be disclosed in such report, and that such report shall not be published at state expense."

[3]"31-1303. Information.—All proceedings under this chapter shall be by sworn information to be filed by the prosecuting attorney or a probation officer of the county in which the child proceeded against resides. Such information shall set forth, in a general way, the facts constituting any alleged delinquency, and also that such child is without the care or protection of a parent or guardian, or that any parent or guardian (naming him), is neglecting such child, or that such child is a juvenile disorderly person within the meaning of section 31-1311 of the Idaho Code. When the information states sufficient facts to apprise the court that a probable delinquency exists, or that the child proceeded against is a juvenile disorderly person, all· irregularities or defects of form therein must be disregarded and all technical pleas or objections thereto must be summarily disposed of by the court, and the court's ruling thereon shall be final. It shall be unlawful for any officer to charge or collect any fees, or for any county or state to pay any fees for any service performed by any officer under the provisions of this chapter."

consists in, sets up various and sundry offenses committed by them. The complaint in the juvenile court charges

"that Marlin Hewlett, Duane Harvey, Monte Newell, Donald Anderson, Tommy Johnson and Guy Helm and on or about the 20th day of January, 1945 and prior thereto and in the County of Clearwater and in the County of Nez Perce, state of Idaho, then and there being and each child being under the age of eighteen years and not then being an inmate of a State institution, or any institution incorporated under the laws of the State for Idaho for the care and correction of delinquent children, did wilfully, intentionally and maliciously, and in violation of Chapter 13 of Title 31, I.C.A. 1932 and with the intent to violate the laws of the State of Idaho, and each of them being incorrigible, and each of them did associate together and associate with persons not of good moral character, and did associate with thieves and other persons engaged in breaking and entering buildings belonging to others, namely the store of the Oud Pharmacy, the store of J. J. Johnson known as the Corner Store; the store of Wells Grocery store and the store of Holmes Hardware store and take and remove therefrom and did take and remove from cars and other places property not their own, and did habitually wander the streets and highways at night and in the nighttime without being on any lawful business and whereby and force of the statute in such case made and provided, the said child is and each of said children, is deemed a Juvenile Delinquent Person."

The proofs, that the delinquency of these appellants was chiefly made up of violations of state law against burglaries and theft and other crimes, all go to unmistakably *constitute their delinquency.* The juvenile court has no criminal jurisdiction in delinquency cases. The proceeding in that court is one of a civil nature and is governed by chapter 13, title 31, I.C.A. Whereas, prosecution for a felony in the district court is governed by the penal code. In each court and case the public prosecutor is the attorney for the complainant. He may, in the first instance, think the case can be best disposed of by the delinquency court but, when the evidence is produced in court, he may conclude that a felony charge should be made in the district court under its criminal jurisdiction and proceed accordingly.

The fact that the parents were not made parties

to the original proceeding in the delinquency court, does not affect the substantial rights of the parties or the merits of the controversy. The record discloses that the *parents were notified of the proceeding and were in court at the time of the hearing, and participated in the proceedings.* Moreover, the statute (sec. 31-1303, supra) provides that the procedure should be *summary.*

The probate court made a series of findings of fact and thereupon entered a decree, to the effect that the boys were juvenile delinquents and concluded:

"That all of the said boys were allowed and permitted to attend public dances and other resorts of questionable character and without and beyond the supervision of the parents, and are being neglected by their parents.

"NOW THEREFORE FROM THE FOREGOING FACTS IT IS ORDERED, ADJUDGED AND DECREED That the said juveniles, and each of them are found to be a juvenile delinquent person under the terms and provisions of the Statute found in Chapter 13, Title 31, I.C.A. of 1932.

"IT IS FURTHER ORDERED AND THE COURT SO FINDS THAT The parents of the said minors and each of them were summoned to appear at the said hearing.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED That the said minors, Marlin Hewlett, Monty Newell, Tommy Johnson, Donald Anderson and Guy Helm, and each of them be and they each are committed to the Industrial Training School of Idaho, at St. Anthony, until they reach the age of twenty-one years, or are sooner released from said school under the regulations thereof.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED That you, Jack K. Conard, the sheriff of Clearwater County, Idaho, do take and safely deliver to said school, the said Marlin Hewlett, Monty Newell, Donald Anderson, Tommy Johnson and Guy Helm, and each of them, and the said juvenile delinquent persons, and each of them, are committed to your care and custody for that purpose."

On writ of review to the district court, that court after hearing the matter entered a decree as follows:

"It is therefore adjudged that the judgment of the pro-

bate court that the said juveniles are, and each of them is, delinquent be, and the same here is, affirmed; that portion of the judgment committing said delinquents, and each of them, to the Industrial Training School be, and the same hereby is, adjudged a nullity and to be held for naught, and the matter is to be remanded to the probate court, sitting as a juvenile court, for such further proceedings as that court shall be advised are necessary and proper in the premises."

It follows, from what has been said herein above, that the judgment of the district court affirming the probate court, "That the said juveniles, and each of them are found to be a juvenile delinquent person", should be affirmed by this court, and it is so ordered. It also follows that the judgment of the district court, adjudging the order of the probate court, committing defendants to the Industrial Training School, to be a nullity, was erroneous and should be, and is hereby, reversed. The cause is remanded to the district court with direction to affirm the judgment of the probate court and remand the case to the juvenile court.

Budge and Givens, JJ., concur.

HOLDEN, J., dissenting.—January 30, 1945, a complaint was filed in the Juvenile Court of Clearwater County by Oscar W. Gilmore, Probation Officer of that county, against Marlin Hewlett, Monty Newell, Donald Anderson, Tommy Johnson and Guy Helm, minors under the age of eighteen years. The complaint charged these minors were "engaged in breaking and entering buildings belonging to others, namely, the store of the Oud Pharmacy, the store of J. J. Johnson, known as the Corner Store; the store of Wells Grocery store and the store of Holmes Hardware store; and take and remove therefrom, and did take and remove from cars and other places property not their own." The complaint further charged the minors associated with thieves and "persons not of good moral character," and "did habitually wander the streets and highways at night and in the nighttime without being on any lawful business," and that each of said minors "is deemed a juvenile delinquent person."

Thereafter a hearing was had in the Juvenile Court on the charge set forth in the complaint and on the first day

of February, 1945, Monty Newell was "found guilty of having burglarized two stores at Peck, Nez Perce County, Idaho on January 20, 1945; twice broke and entered Oud's Pharmacy in Orofino, Idaho once December 6, 1944 and once in January, 1945; that on January 13, 1945 he robbed a man at Ahsahka, Idaho; broke into one car at Ahsaka, Idaho on October 28, 1944, and five cars at Peck, Idaho January 20, 1945 and of taking one express package from the railroad station in Orofino, Idaho in summer of 1944"; Marlin Hewlett was "found guilty of two robberies of the Corner Store in Orofino, Idaho once on January 1, 1945 and once prior thereto; Oud Pharmacy in Orofino, Idaho once December 6, 1944 and once in January, 1945; two stores in Peck, Idaho on January 20, 1945 and robbing a man at Ahsahka, Idaho on January 13, 1945 and five cars at Peck, Idaho on January 20, 1945"; Tommy Johnson was "found guilty of robbery of two stores at Peck, Idaho on January 20, 1945 and being present at the robbery of five cars at the same place and time"; Guy Helm was "found guilty of two robberies of the Oud Pharmacy once some time in the summer of 1944; and was the lookout for an attempted robbery of Oud Pharmacy in January of 1945; and knew of the robbery of the cars in Ahsahka and of the man and knew of the robbery at Peck"; Donald Anderson was "found guilty of stealing from five cars at Peck, Idaho on January 20, 1945; robbery of two stores in Peck, Idaho on January 20, 1945; robbery Oud Pharmacy in Orofino, Idaho, summer of 1944 and an attempt in January of 1945."

Thereafter and on the 9th day of February, 1945, these minors were "committed to the Industrial Training School of Idaho, at St. Anthony, until they reach the age of twenty-one years, or are sooner released from said school under the regulations thereof."

February 12, 1945, the parents jointly and severally appealed to the District Court of Clearwater County from the "decree" of the said Juvenile Court, committing the minors to the State Industrial Training School. And on the same day the minors and their parents filed an application in the District Court of Clearwater County for a writ of review. February 12, 1945, the application was granted and a writ of review issued. March 13, 1945, the District Court affirmed the judgment of the Juvenile Court "that

the said juveniles are, and each of them is, delinquent be, and the same here is, affirmed; that portion of the judgment committing said delinquents, and each of them, to the Industrial Training School be, and the same hereby is, adjudged a nullity and to be held for naught, and the matter is to be remanded to the probate court, sitting as a juvenile court, for such further proceedings as that court shall be advised are necessary and proper in the premises."

Thereafter, the parents, as well as the minors, appealed from that part of the judgment of the District Court adjudging the said minors were delinquents. On the 24th day of April, 1945, Hon. E. B. Steele, respondent Judge of the Juvenile Court of Clearwater County, cross-appealed "from that part of the judgment shown on page one (1) thereof overruling the demurrer to the application for writ of review and from that part of the judgment, and the whole thereof, which refused to quash the writ of review and the giving of judgment in any form upon such writ of review."

These appeals require an inquiry into the power and jurisdiction of a juvenile court. To determine the powers and jurisdiction of that court, it is necessary to examine and construe the pertinent provisions of Title 31, Chapt. 13, I.C.A., "Correction of Delinquent Children."

Section 31-1303, I.C.A., provides:

"All proceedings under this chapter shall be by sworn information to be filed by the prosecuting attorney or a probation officer of the county in which the child proceeded against resides. Such information shall set forth, *in a general way,* the facts constituting any alleged delinquency, and also that such child is without the care or protection of a parent or guardian, or that any parent or guardian (naming him), is neglecting such child, or that such child is a juvenile disorderly person within the meaning of section 31-1311 of the Idaho Code. When the information states sufficient facts to apprise the court that a probable delinquency exists, or that the child proceeded against is a juvenile disorderly person, all irregularities or defects of form therein must be disregarded and all technical pleas or objections thereto must be summarily disposed of by the court, and the court's ruling thereon shall be final. * * *" (Emphasis added.)

Section 31-1304. "Issuance of warrant.—Imprisonment to be avoided. Upon the filing of an information under this chapter, a warrant or capias may issue as in other cases, but no incarceration of the child proceeded against thereunder shall be made or had, unless, in the opinion of the judge of the court, or, in the absence of the judge from the county seat, then in the opinion of the sheriff of the county, it shall be necessary to insure its attendance in court at such times as shall be required. In order to avoid such incarceration, if practicable, it shall be the duty of the sheriff of the county, or his deputy or representative, to serve a notice of the proceedings upon at least one parent of the child, if living and known, or its legal guardian, or if his or her whereabouts or residence is not known, or if neither parent or guardian shall be in this state, then some relative living in the county, if any there be whose whereabouts are known, and such judge or sheriff may accept the verbal or written promise of such person so notified, or of any other proper person, to be responsible for the presence of such child at the hearing in such case, or at any other time to which the same may be adjourned or continued by the court. * * *"

Section 31-1305:

"When any child under the age of eighteen years is arrested, with or without warrant, *except when the charge against such child is a felony,* such child shall, instead of being taken before a justice of the peace or police magistrate, be taken directly before the probate court; or if the child is taken before a justice of the peace or police magistrate, upon complaint sworn out in such court or for any other reason, it shall be the duty of such justice of the peace or police magistrate to transfer the case to such probate court, and of the officers having the child in charge, to take the child before that court, and in any such case the court may proceed to hear and dispose of the case in the same manner as if such child had been brought before the court upon information originally filed as herein provided." (Emphasis added).

Section 31-1306:

"It shall be the duty of the court, upon any child being brought before him upon any such information, to make such investigation as may be necessary to ascertain the

degree of delinquency, or the facts tending to show such child is a juvenile disorderly person. * * * If the court shall be of the opinion, after making such investigation, that the child proceeded against should be committed in the manner provided for in Section 31-1308 of the Idaho Code, it shall then be the duty of the court to make an order in said cause fixing the time and place for a hearing to be had upon the information, which shall not be less than five days nor more than fifteen days from the time of making the order * * *"

Section 31-1307:

"It shall be the duty of the county attorney to appear at the hearing on any information filed under this chapter, and he shall, if the probate judge request, assist the court at the hearing. * * * The court shall determine, without the intervention of a jury, all issues of law and of fact raised upon the hearing. At the conclusion of the hearing or within forty-eight hours thereafter, the court shall enter a written judgment in said cause, and record the same in the records of the court, and the court in such judgment shall make findings of what facts have been proven or not proved. If the court shall adjudge that the child proceeded against is a delinquent within the meaning of section 31-1301, the particular delinquency or delinquencies as found by the court shall be set forth in said judgment; or if the court, in its judgment, find such child is a juvenile disorderly person, the court shall set forth in said judgment wherein such child has been disorderly within the meaning and intent of section 31-1311. * * *"

Section 31-1308:

"In any case of a delinquent child coming under the provisions of this chapter, the court may continue the hearing from time to time, and may commit the child to the care of the sheriff, and may allow said child to remain in its own home, subject to the sheriff, such child to report to the court or sheriff as often as may be required, and subject to be returned to the court for further proceedings whenever such action may appear necessary, or the court may cause the child to be placed in a suitable family home, subject to the friendly supervision of the sheriff, and the further order of the court; or it may authorize the child to be boarded out in some suitable family home, in case

provision is made by voluntary contribution or otherwise for the payment of the board of such child, until suitable provision be made for the child in a home without such payment, or the court may commit such child to the Idaho industrial training school; or the court may commit the child to any institution within the county, incorporated under the laws of this state, that may care for children or to any state institution which may now or hereafter be established for the care of boys or girls. * * *"

Section 31-1301:

"Delinquent Child Defined.—This chapter shall apply only to children under the age of eighteen years not inmates of a state institution, or any institution incorporated under the laws of the state, for the care and correction of delinquent children. * * * The words 'delinquent child' shall include any child under the age of eighteen years who violates any law of this state, or any city or village ordinance; or who is incorrigible or who knowingly associates with thieves, vicious or immoral persons; or who is growing up in idleness or crime, or who knowingly visits or enters a house of ill-fame; or who knowingly patronizes or visits any policy shop or place where gambling device is, or shall be operated; or who patronizes or visits any poolroom or bucket shop, or who wanders the streets in the nighttime without being on any lawful business or occupation; or who habitually wanders about any railroad yard or tracks, or who jumps or hooks on to any moving train, or enters any car or engine without lawful authority; or who habitually uses vile, obscene, vulgar, profane or indecent language, or is guilty of immoral conduct in public places or about any schoolhouse. Any child committing any of the acts herein mentioned shall be deemed a juvenile delinquent person, and shall be proceeded against as such in the manner hereinbefore provided. * * *"

Section 31-1311:

"Juvenile Disorderly Person Defined.—Every child within the provisions of this chapter who does not attend school, as provided in section 1018 of the Compiled Statutes of Idaho, or who is in attendance at any public, private or parochial school, and is vicious, incorrigible or immoral in conduct, or who is an habitual truant from school, or who habitually wanders about the streets and public places dur-

ing school hours without lawful occupation or employment, or who habitually wanders about the streets in the nighttime, having no employment or lawful occupation, shall be deemed a juvenile disorderly person, and be subject to the provisions of this chapter."

With this rather complete picture before us, the purpose of the legislature becomes clear: to correct and reform delinquent children, and also and as well to provide for the care, training and protection of neglected children permitted by their parents to "wander about the streets in the nighttime having no lawful occupation or employment," or a child "who habitually wanders about any railroad yard or tracks or who jumps or hooks on to any moving train." Two classes of children come within the provisions of the statute—the delinquent and the neglected. To the end these children may be built into honest, industrious, useful citizens every precaution is taken to protect them from bad or corrupting influences. When arrested, the child cannot be incarcerated, unless necessary. Furthermore, to avoid any necessity for that it is made the duty of the sheriff to at once notify the parents, if living or know, "or the court may cause the child to be placed in a suitable family home" and "continue the hearing from time to time," "subject to be returned to the court for further proceedings whenever such action may appear necessary." When proper care, training and protection of the child from evil influences cannot be found either in the home of its parents or other "suitable family home," or private institution, the child can be committed to the Industrial Training School. That brings us to the decisive question presented by the record: did the legislature intend to confer on a juvenile court either civil or criminal jurisdiction to commit felons, under the age of eighteen years, to the Industrial Training School, upon conviction, in a juvenile court, of the commission of a felony, or felonies?

Bearing in mind a neglected child, one who, for instance, simply because of the neglect of his parents, is permitted to "wander about the streets in the nighttime having no lawful occupation or employment" as well as the child "who habitually wanders about any railroad yard or tracks, or who jumps or hooks onto any moving train," can be, and are, committed to the Industrial Training School, and that the purpose of so committing them is to reform and build

them into honest, upright citizens, could the legislature have intended to vest a juvenile court with either civil or criminal jurisdiction to also commit to the same school, thugs and felons, even though under the age of eighteen years, where they would necessarily come into daily, intimate contact with numerous children whose greatest crime would be that their parents neglected them and they, by reason thereof, wandered about the streets at night and jumped on moving trains? And further, would the legislature having taken the utmost care, as above pointed out, to protect all the children, delinquent, as well as neglected, from criminal influence, from the very moment of their arrest, then nullify all such safeguards and practically defeat the work of building the children into honest and industrious citizens, by vesting a juvenile court with either civil or criminal jurisdiction to commit felons to the very same school (as in the case at bar), where, upon arrival at the school, they would at once become the daily associates and schoolmates of the simply neglected and abandoned children?

Moreover, and as will have been observed, the legislature expressly provided (Sec. 31-1305, supra) when a child under the age of eighteen years is arrested, it must be taken directly before a juvenile court for investigation, *except* when the charge against the child is a felony. That should make it clear the legislature did not intend to place felons, even though under eighteen, in the same class with neglected children, and thus subject, as fully as, for instance, neglected children, to be committed to the Industrial Training School. But it is insisted the word "charge" used by the legislature in Section 31-1305, supra, and not the *offense proven* (in this case numerous grave felonies), determines the question in favor of the jurisdiction of the juvenile court. In other words, that because the legislature used the word "charge" in the clause (Sec. 31-1305, supra), reading: "except when the charge against such child is a felony," that that shows the legislature intended to vest juvenile courts with jurisdiction to commit felons (no matter how hardened or experienced, just so they are under the age of eighteen) to the Industrial Training School. That the legislature had no such intention seems clear from other provisions of the same section (31-1305, supra) to the effect that when a child under the age of eighteen is arrested it "shall, instead of being taken before a justice

of the peace or police magistrate, be taken directly before the probate court (juvenile court)"; and, further, if a delinquent child is taken before a justice of the peace or police magistrate instead of before a juvenile court, "it shall be the duty of such justice of the peace or police magistrate to transfer the case to such probate court (juvenile court), and of the officers having the child in charge, to take the child before that court, and in any such case the court may proceed to hear and dispose of the case in the same manner as if such child had been brought before the (juvenile) court upon information originally filed as herein provided." Justices of the peace and police magistrates have no jurisdiction to commit children to the Industrial Training School, but justices and police magistrates are vested with jurisdiction to hold preliminary examinations of persons charged with felonies and to bind them over to the district court to answer—jurisdiction which juvenile courts are not vested with. Can anything be plainer, then, that what the legislature intended to provide, and does provide, is this: that when a child under eighteen is arrested, the arresting officer shall take the child directly before a juvenile court, *except* when the charge is a felony, and that if by any chance a delinquent child is taken before a justice of the peace or police magistrate by an arresting officer, the justice of the peace or police magistrate, as the case may be, shall immediately transfer the case to the juvenile court. It will be noticed that neither a justice of the peace or police magistrate is either authorized or directed to transfer a case against a child to a juvenile court where the charge against the child is a felony, from which it follows that in all such cases (felonies) a justice of the peace or police magistrate shall retain jurisdiction. Furthermore, to *except,* as that word is used in the above quoted exception clause, is to *exclude* (32 C.J.S., p. 1152), not *include.* To give the word, *except,* any other interpretation than that, nullifies the exception clause. If the legislature had not intended to *except* or *exclude,* it would not have incorporated the exception clause in the section.

Furthermore, the legislature expressly vested district courts with jurisdiction to determine the question as to when and under what circumstances it would be proper and advisable to commit a felon under eighteen to the Industrial Training School, by the enactment of Sec. 32-3101, I.C.A. The legislature, it appears therefrom, was not un-

mindful of the fact that occasionally a case would arise where a boy or girl convicted of the commission of a felony, if surrounded by appropriate influences and given proper training, might be saved from a life of crime; hence, vested the district court with jurisdiction to decide when and under what circumstances a felon under eighteen should be committed to the school. Under Sec. 32-3101, supra, it is provided that when a boy or girl between the ages of eight and eighteen is "found guilty of any felony except murder or manslaughter, the court or judge may, if in his opinion the accused is a proper subject therefor, instead of entering judgment, cause an order to be entered for such boy or girl to be sent to the Idaho Industrial Training School, in pursuance of the provisions of this chapter, and all acts amendatory thereof." It will be noted that even a district court, a court with broad, general jurisdiction, vested with power in proper cases, to sentence felons of all ages to death, is prohibited by Sec. 32-3101, supra, except in special cases, from committing felons to the Industrial Training School, even though under eighteen. Surely, the legislature did not intend to vest a juvenile court with greater jurisdiction in the premises than a district court. It is my view that in determining whether the legislature did, or did not, intend to vest juvenile courts with either civil or criminal jurisdiction to commit felons under eighteen to the Industrial Training School, the decisive question is: did the legislature intend to subject delinquent children (children, while delinquent, who have, nevertheless, not yet become felons), to the dangerous, corrupting, infectious influence of felons, even though, as in the case at bar, under eighteen? The legislature should be credited with having more common sense than that.

Furthermore, the statute does not, in my opinion, clothe a juvenile court with discretion to take *two* courses, one for delinquency, the other as for a felony. It, of course, has jurisdiction of delinquent children, but it has no jurisdiction whatever of felons of any age. Section 31-1306, supra, vests a juvenile court with jurisdiction to fully investigate into each case of alleged delinquency to ascertain "the facts tending to show such child is a juvenile disorderly person." The section then provides that "if the court shall be of the opinion, after making such investigation, that the child proceeded against should be committed in the manner provided for in Section 31-1308 of the Idaho Code,

it shall then be the duty of the court to make an order in said cause fixing the time and place for the hearing to be had upon the information, which shall not be less than five days nor more than fifteen days from the time of making the order. * * *"

Section 31-1308, supra, relied upon to support the contention the juvenile court has discretion to proceed against a delinquent as for a felony, not only does not give that court such discretion, but to the contrary, prescribes an entirely different course. That section (31-1308) provides, as hereinbefore pointed out, that:

"In any case of a delinquent child coming under the provision of this chapter, the court may continue the hearing from time to time, and may commit the child to the care of the sheriff, and may allow said child to remain in its own home, subject to the sheriff, such child to report to the court or sheriff as often as may be required, and subject to be returned to the court for further proceedings whenever such action may appear necessary, or the court may cause the child to be placed in a suitable family home, subject to the friendly supervision of the sheriff, and the further order of the court; or it may authorize the child to be boarded out in some suitable family home, in case provision is made by voluntary contribution or otherwise for the payment of the board of such child, until suitable provision be made for the child in a home without such payment, or the court may commit such child to the Idaho industrial training school; or the court may commit the child to any institution within the county, incorporated under the laws of this state, that may care for children or to any state institution which may now or hereafter be established for the care of boys or girls. * * *"

Therefore I conclude the "decree" of the juvenile court committing appellants, under eighteen, to the Industrial Training School should be vacated and set aside, and the action dismissed. And I am authorized to say Mr. Justice Miller concurs in this dissenting opinion.